IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JBARM, L.L.P., and** | § | |
| **SHOWCASE PRODUCTIONS, INC.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | No. 3:06-CV-2351-L |
| v. | § | ECF |
| | § | |
| **MAD RIVER POST, INC.,** | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's Order of Reference (doc. 6), Defendant Mad River Post, Inc.'s ("Defendant") motion to compel arbitration and for stay (doc. 5) has been referred to this Court for proposed findings and recommendations for disposition of the motion. For the reasons set forth herein, this Court recommends that the motion be granted in part and denied in part. This Court recommends that the motion be granted to the extent that Defendant asks for the District Court to compel arbitration of this action and denied to the extent that Defendant asks for a stay pending completion of arbitration. This Court also recommends that this case be dismissed without prejudice.

**I.**

In October of 2001, Plaintiff Showcase Productions, Inc. ("Showcase") and Defendant entered into a partnership agreement for the purposes of providing multimedia services. Pls.' Resp. at 1-2; Def.'s Mot. at 2. The entity formed as a result of this agreement was a Delaware limited partnership known as Mad River Post Dallas, L.P. ("MRPD"). *Id*. After approximately two years, the partnership was dissolved. *Id*. The parties are in dispute regarding the circumstances

surrounding the dissolution of the partnership.  *Id*.  Defendant transferred its entire partnership interest to the Appletons, the owners of Showcase, resulting in Showcase and the Appletons having 100% control of the partnership.  Pls.' Resp. at 2.  The Appletons created an entity called JBARM, L.L.P. for this transfer.  Def.'s Mot. at 2-3.  As a part of this transfer, the parties executed a number of agreements, the Cooperation Agreement, the Master Transaction Agreement, and the License Agreement (collectively, the "Agreements"), that among other things, governed the post-dissolution obligations of the parties.  Pls.' Resp. at 2; Def.'s Mot. at 2-3.  The Agreements contain identical arbitration provisions (the "Arbitration Provision") at issue in Defendant's motion to compel arbitration.  Def.'s Mot. at 3; Def.'s Ex. 1A at ¶ 13, Ex. 1B at ¶ 17, Ex. 1C at ¶ 18.  On September 18, 2006, JBARM and Showcase (the "Plaintiffs") brought an action against Defendant in the 192nd Judicial District Court of Dallas County, Texas, alleging fraud by non-disclosure and fraudulent misrepresentation.  Def.'s Second Notice of Removal at Ex. 3; Pls.' Original Pet. at 1, 6-8.  On December 20, 2006, Defendant removed this action to the District Court based on diversity jurisdiction.  On January 12, 2007, Defendant filed its motion to compel arbitration and for stay.

## II.

In deciding a motion to compel arbitration, courts should generally apply the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [Federal Arbitration] Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  "Section 2 is the primary substantive provision of the [Federal Arbitration] Act, declaring that a written agreement to arbitrate 'in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id*. (citing 9 U.S.C. § 2).

In this case, this Court does not see any reason not to apply federal law in its analysis of the motion to compel arbitration. The parties do not contend that the Federal Arbitration Act ("FAA") is inapplicable, and this case appears to be within the purview of the FAA. *See* 9 U.S.C. § 1 *et seq*. However:

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed., Supp. IV) or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26 n.32. In this case, because complete diversity of citizenship exists, and the amount in controversy exceeds $75,000, the District Court has jurisdiction. *See* 28 U.S.C. § 1332(a).

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. *See also Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) ("The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration."). "By its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

Courts should conduct a two-step process when deciding whether a motion to compel

arbitration should be granted. *OPE Int'l, L.P. v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001) (citing *Webb v. Investacorp., Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996)). "The first step is to decide whether the parties agreed to arbitrate their dispute." *OPE Int'l, L.P.*, 258 F.3d at 445. (citing *Webb*, 89 F.3d at 258). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb*, 89 F.3d at 258 (citations omitted). "When deciding whether the parties agreed to arbitrate the dispute in question, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); citing *Perry v. Thomas*, 482 U.S. 483, 492-93 n.9 (1987)). "In applying state law, however, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'" *Webb*, 89 F.3d at 258 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)). The second step in deciding a motion to compel arbitration is to determine "'whether legal constraints external to the parties' agreement foreclosed the arbitration'" of the claims at issue. *Webb*, 89 F.3d at 258 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); citing *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir. 1995); citing *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)).

### III.

#### A. Agreement to Arbitrate

The first step in this Court's analysis is to determine whether the parties agreed to arbitrate their disputes. *See OPE Int'l, LP*, 258 F.3d at 445 (citing *Webb*, 89 F.3d at 258). In doing so, this

4

Court considers whether there is a valid agreement to arbitrate between the parties, and whether the disputes in question fall within the scope of that arbitration agreement. *See Webb*, 89 F.3d at 258. In their response, Plaintiffs state that they "do not dispute that a valid arbitration [provision] exists . . . ." Pls.' Resp. at 5. Rather, Plaintiffs argue that the Arbitration Provision is not applicable to the causes of action set forth in Plaintiff's petition "because the acts complained of happened prior to the Agreements." *Id*. The Arbitration Provision states the following:

> <u>Governing Law: Consent to Arbitration</u>. . . . Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator shall be final and binding on the parties, and judgment may be entered in any court having jurisdiction thereof. . . . The site of the arbitration shall be in Denver, Colorado. No action at law or in equity based upon any claim arising out of this Agreement shall be instituted in any court by a party hereto except (a) an action to compel arbitration pursuant to this Section [] or (b) an action to enforce an award obtained in an arbitration proceeding in accordance with this Section [].

Def.'s Mot. at 3; Def.'s Ex. 1A at ¶ 13, Ex. 1B at ¶ 17, Ex. 1C at ¶ 18. Plaintiffs contend that they were fraudulently induced into signing the Agreements which contain the Arbitration Provision. Pls.' Resp. at 2-4. Generally, language within the arbitration clause stating that the clause governs all disputes "relating to" the agreement is interpreted as a broad provision covering almost all disputes arising between the parties to a contract. *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) ("courts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract"); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164-65 (5th Cir. 1998) (holding that when parties agree to an arbitration clause governing "[a]ny dispute, controversy or claim arising out of or in connection with or relating to this Agreement," they "intend the clause to reach all

5

aspects of the relationship.") (quoting *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 n.2 (5th Cir. 1993)). Since Plaintiffs claim that they were fraudulently induced into signing the Agreements, although the events complained of may have occurred prior to their signing, these are clearly claims "relating to" the Agreements. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24 ("*In Prima Paint Corp. v. Flood & Conklin Mfg. Corp.*, 388 U.S. 395 (1967), for example, the parties had signed a contract containing an arbitration clause, but one party alleged that there had been fraud in the inducement of the entire contract (although the alleged fraud did not go to the arbitration clause in particular). The issue before us was whether the issue of fraud in the inducement was itself an arbitrable controversy. We held that the language and policies of the Act required the conclusion that the fraud issue was arbitrable.").

## B. Possible Foreclosure of Arbitration

In the second step of this inquiry, this Court should decide whether there are any legal restraints external to the Agreements that would foreclose arbitrating the claims at issue. *See Webb*, 89 F.3d at 258. The party seeking to avoid the arbitration agreement has the burden of demonstrating that such restraints exist. *Walton v. Rose Mobile Homes*, LLC, 298 F.3d 470, 473 (5th Cir. 2002). Plaintiffs' only other argument, aside from the one mentioned above, is that the District Court does not have the authority to compel arbitration in accordance with the terms of the Arbitration Provision because the provision states that arbitration shall be held in Denver, Colorado. Pls.' Resp. at 6. Plaintiffs argue that pursuant to the FAA, "hearings and proceedings, under an arbitration agreement, shall be within the district in which the petition for an order directing such arbitration is filed." Pls.' Resp. at 6. Therefore, Plaintiffs argue that since Denver, Colorado is not within the Northern District of Texas, the District Court is not able to compel arbitration in

6

Colorado. *Id*. at 7. Section 4 of the FAA provides in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4. However, in considering Section 4, the Fifth Circuit in *Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1278 (5th Cir. 1975) stated the following:

> [W]here the party seeking to avoid arbitration brings a suit . . . in a district other than that in which arbitration is to take place under the contract, the party seeking arbitration may assert its Section 4 right to have the arbitration agreement performed in accordance with the terms of the agreement. We find this result to be consistent with the policy underlying the Federal Arbitration Act and not in any way inconsistent with the results reached by the Third and Ninth Circuits.

*Id*.[1] The Fifth Circuit in *Dupuy-Busching* affirmed the decision of the District Court for the Southern District of Mississippi directing the parties to proceed with arbitration in North Bergen, New Jersey. *Id*. at 1275. In this case, Plaintiffs have brought suit in a district other than that in which arbitration is to take place under the Agreements, and Plaintiffs seek to avoid arbitration. Therefore, Defendant may assert its Section 4 right to have the arbitration agreement performed in

---

1. The Fifth Circuit in *Dupuy-Busching* considered and distinguished *Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1393-94 (3d Cir. 1974), the Third Circuit case Plaintiffs cite in support of their position that the District Court cannot compel arbitration in Colorado. *See Dupuy-Busching Gen. Agency, Inc.*, 524 F.2d at 1277-78 ("The facts of this case, however, are distinguishable from those before the court[] in Econo-Car International, Inc. . . . in that the party seeking to avoid arbitration (Dupuy-Busching) brought suit in Mississippi, rather than the party seeking arbitration (Ambassador), who removed the case to federal court. Here, therefore, Ambassador may well complain that it did not invoke the jurisdiction of the Mississippi court, but only responded to the actions of Dupuy-Busching.").

accordance with its terms.

### C. Stay Pending Arbitration

Defendant asks that the District Court stay this action pending completion of arbitration. Def.'s Mot. at 1. Section 3 of the FAA provides that a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. "This rule, however, was not intended to limit dismissal of a case in the proper circumstances. The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (citations omitted). The Fifth Circuit has explained:

> Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.

*Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999) (citations omitted).

All the issues raised in this action should be submitted to arbitration for the reasons stated above. Therefore, rather than staying this action, this Court recommends that the case be dismissed without prejudice. *See id.* at 679 ("In the case at hand, the district court determined that all of the claims and issues presented were subject to arbitration under the provisions . . . . In light of this determination, the district court concluded that dismissal without prejudice was the preferred means of enforcing the governing provisions . . . and permitting the parties to conduct arbitration . . . . The

8

district court acted well within its discretion when it dismissed this case without prejudice to re-filing."). *See also Third Party Advantage Admin'rs, Inc. v. J.P. Farley Corp.*, No. 3:06-CV-0534-G, 2006 WL 3445216, at *8 (N.D. Tex. Nov. 27, 2006) (Fish, C.J.) (plaintiffs' claims against defendants were dismissed without prejudice in lieu of the stay requested by one of the defendants, because all issues raised in district court were subject to arbitration).

**IV.**

For the reasons stated above, this Court recommends that the motion to compel arbitration and for stay be granted in part and denied in part. This Court recommends that the motion be granted to the extent that Defendant asks for the District Court to compel arbitration of this action and denied to the extent that Defendant asks for a stay pending completion of arbitration. This Court also recommends that this case be dismissed without prejudice.

**SO RECOMMENDED**.  May 10, 2007.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).